# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-3765

_____

| | | |
|---|---|---|
| Missouri Department of Elementary and Secondary Education; Missouri School for the Blind, | * * * * | |
| | * | |
| Appellants, | * * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the Western |
| Springfield R-12 School District; | * | District of Missouri. |
| Andrew Lewis, Parent and natural | * | |
| guardian of Katherine Lewis, a | * | |
| minor child; Martha Lewis, Parent | * | |
| and natural guardian of Katherine | * | |
| Lewis, a minor child; Katherine | * | |
| Lewis, a minor and a child with a | * | |
| disability, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: June 9, 2003

Filed: March 1, 2004

_____

Before MELLOY, HANSEN, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

The Missouri Department of Elementary and Secondary Education (DESE)[1] and the Missouri School for the Blind (MSB) appeal the district court's[2] order affirming an administrative panel's decision requiring them to provide, participate in, and pay for the education of Katherine, a severely-handicapped deaf and blind child, at a specialized private school. We affirm in part and reverse in part.

## I. *Background*

The facts of this case describe a parental nightmare–Katherine's parents watched as the scholastic needs of their child were processed through the grinding machinery of state and local education bureaucracies. Katherine resides within the Springfield R-12 School District (the District). The District began providing educational services within the school district to Katherine when she entered kindergarten for the 1989-90 school year.[3] The District attempted to provide an appropriate educational program for Katherine, including hiring numerous outside consultants and providing training programs for District staff. Despite those efforts, Katherine's behavior deteriorated significantly during the 1997-98 school year, and in February 1998, Katherine's parents, the Lewises, removed Katherine from public

---

[1] DESE is a department of the State of Missouri. By state statute, it operates three state-school programs for children with disabilities: MSB, the Missouri School for the Deaf (MSD), and thirty-six State Schools for the Severely Handicapped. When a student attends one of these state-school programs, the local school district pays only its local tax effort, and DESE pays the remainder of the cost for the student's education.

[2] The Honorable Scott O. Wright, United States District Judge for the Western District of Missouri.

[3] Katherine's disabilities include the following: hearing impairment; visual impairment/legally blind; cognitive/developmental delays; physical anomalies, including repaired cleft lip and palate, ventricular sepal defect, skeletal malformation and oral/facial anomalies; significant aggressive, self-abusive, and non-compliant behaviors; severe language delays.

school. The Lewises advised the District that they intended to place Katherine in an out-of-state residential setting at Perkins School for the Blind in Watertown, Massachusetts (Perkins).[4] The District agreed with the Lewises that a residential placement was needed, but believed that MSB could provide an appropriate residential program for Katherine due to its proximity to the Lewises' home and its lower cost.

In March 1998, the District referred Katherine for admission to MSB. Some three months later, on July 2, 1998, MSB notified the District that it would not accept Katherine. The school claimed it did not have an appropriate program of services for Katherine, even though it previously had–and advertised that it continued to have–a program for deaf/blind students. Rather than accept Katherine, MSB recommended that the District consider placing Katherine at the Missouri School for the Deaf.

In August 1998, Dr. John Heskett, then the Assistant Commissioner of Education, Division of Special Education within DESE, told the District that the rejection letter from MSB was "curious," and "he was having difficulty understanding why [Katherine] would not be eligible for services to Missouri School for the Blind." He assured the District that MSB could provide an appropriate program for Katherine, and that Katherine would be accepted at MSB. On September 14, 1998, Dr. Yvonne Howze, MSB's Superintendent, wrote a letter to DESE administrators and the District describing the type of program that would need to be created to serve Katherine at MSB. The District and DESE interpreted this as an acceptance letter for Katherine to attend school there. However, Dr. Howze later denied that it was a letter of acceptance. According to Dr. Howze, the letter merely described parameters for a potential program. While the state and local education officials debated their relative

---

[4] Perkins is a residential school that educates students who are blind, visually handicapped, deaf-blind, or multi-handicapped blind. Perkins's student body totals approximately 200 students, including over fifty deaf/blind students. Perkins employs a staff of approximately 700 people.

capabilities and responsibilities, the Lewises placed Katherine at Perkins for the 1998-99 school year.

On October 6, 1998, the Lewises filed a due-process request with DESE pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et. seq.* ("IDEA"). The Lewises claimed that the District could not provide Katherine with a legally-mandated free appropriate education and that Perkins was the appropriate placement for her. The District settled the claim with the Lewises by agreeing that it would reimburse Lewises for the cost of Katherine's placement at Perkins for the 1998-99 and 1999-2000 school years. In settling, the District relied upon assurances from Dr. Heskett, on behalf of DESE, that DESE would reimburse all of the District's eligible expenses for Katherine's placement at Perkins. The District then planned to seek reimbursement from a state fund called the Extraordinary Cost Fund.[5] The District subsequently filed an Extraordinary Cost Fund Application with DESE for the 1998-99 school year.[6]

_____

[5] The Extraordinary Cost Fund is a fund appropriated by the state legislature and established by regulation of the State Board of Education (5 CZAR § 70-742.170) for the purpose of reimbursing school districts in Missouri for extraordinary costs associated with providing a free appropriate public education to disabled students under the IDEA. When a school district makes a claim to the Extraordinary Cost Fund for reimbursement, it must assume responsibility for an amount equal to five times its current per-pupil expenditure, or in the case of the District, a total of approximately $25,000. Then, because the total amount of requests for any given school year may exceed the amount of money appropriated to the fund for that fiscal year, school districts may be reimbursed on a prorated basis. The Extraordinary Cost Fund is capped and does not provide dollar-for-dollar reimbursement.

[6] The total cost of Katherine's program at Perkins in 1998-99 was $175,363.77. The Extraordinary Cost Fund reimbursed the District $106,267.69, leaving unreimbursed costs of $69,096.08, for which the District was responsible. If Katherine had attended MSB during the 1998-99 school year, the only cost to the District would have been an amount equal to its local tax effort for the year, or $2,644.82. During the 1999-2000 school year, the total cost of Katherine's program

-4-

On April 18, 2000, representatives from the District and DESE again discussed Katherine's placement options. Pursuant to DESE's request, the District sent Katherine's individualized education program to DESE for review. On May 15, 2000, representatives from the District and DESE again met to discuss Katherine's placement. The District expressed its concerns about the cost of the program at Perkins and indicated that the current level of state support was insufficient. DESE took the position that MSB "would have no way to defend refusing a referral if one were made at that time." Despite these assurances, MSB again found Katherine ineligible for placement after reviewing her individualized education program and determined that Perkins was the appropriate placement.

In a telephone conversation with District representatives on June 2, 2000, Dr. Stephen Barr, the succeeding Assistant Commissioner of Education, Division of Special Education for DESE, reversed MSB's refusal of admission. He assured the District that MSB was an appropriate placement option for Katherine and that she was eligible to attend the school for the 2000-01 school year. Dr. Barr stated that MSB would be Katherine's educational placement because he determined that: (a) the Lewises and the District could not reach a reasonable agreement to educate Katherine in the District; (b) MSB formerly had a program for deaf/blind children; (c) if DESE had to spend a million dollars over five years to educate Katherine, it should spend those funds to build capacity in the state; and (d) legislators would be upset at spending $185,000 for an out-of-state program each year.

Later that day, during the scheduled individualized education program meeting between the Lewises and the District, the District recommended a change in placement to MSB for the 2000-01 school year, relying on DESE's assurances that the

_____

at Perkins was $170,952.16. The Extraordinary Cost Fund reimbursed the District only $67,763.02, leaving $80,943.68 of the District's expenses unreimbursed and $22,245.46 of the Lewises' expenses unreimbursed. The District's local tax effort for 1999-2000 was $2,828.19.

necessary resources would be provided to develop an appropriate program for Katherine in the State of Missouri. However, the Lewises continued to recommend Perkins as the appropriate placement. Disregarding the Lewises' recommendation, the District provided the Lewises with a Notice of Action form that proposed changing Katherine's placement from Perkins to MSB. On June 30, 2000, the Lewises filed an IDEA due-process request that initiated the current proceeding.

After a five-day due-process hearing, a three-member panel determined the following pertinent matters: (1) MSB could not provide a free appropriate public education to Katherine, and Perkins was the appropriate placement for her; (2) Katherine is a "severely handicapped child" as defined under Mo. Rev. Stat. §162.675; (3) DESE must provide special-educational services for all severely-handicapped students who are not being provided such services by a local school district, either at a state-operated school or in private placement, pursuant to Mo. Rev. Stat. § 162.725; (4) Pursuant to Mo. Rev. Stat. § 162.740, the financial responsibility of a local school district for educating a "severely handicapped child" is limited to the amount of its local tax effort; (5) DESE is responsible for the cost and expenses of Katherine's placement at Perkins for school years 1998-99 and 1999-2000, minus the District's local tax effort; (6) DESE and MSB violated 34 C.F.R. § 300.344(a)(4) by failing to provide at the June 2, 2000, individualized education program meeting a representative who was knowledgeable about MSB's curriculum and financial resources.

The district court affirmed the panel's decision in all respects relevant to this appeal. The district court also awarded the Lewises their expert-witness fees and expenses, copying costs, and exhibit costs to be paid by DESE. This appeal involves interpretation of the IDEA, the planning and pecuniary feud between state and local educational entities under Missouri law, and litigation-expense responsibility under federal law.

## II. *Analysis*

DESE and MSB raise three issues on appeal. First, they argue that the IDEA requires neither of them to have a representative attend a student's individualized education program meeting, to review and revise that student's individualized education program, or to select the student's least restrictive environment, when those agencies may only potentially be a direct provider of educational services to the student. Second, they argue that Missouri's education statutes require both the state and local school districts to educate, and pay for the education of, severely handicapped students. Finally, DESE and MSB contend that the Lewises' expert witness fees and expenses associated with the due-process hearing cannot be recovered as costs.

We review de novo the district court's decision. *Indep. Sch. Dist. No. 284 v. A.C.*, 258 F.3d 769, 773 (8th Cir. 2001). However, this does not mean that we start with a clean slate. Rather, we must give "due weight" to the outcome of administrative proceedings, giving particular consideration to state officials' educational judgments. *Board of Education v. Rowley*, 458 U.S. 176, 206 (1982). This means that a court should ordinarily defer to the administrative panel's judgment in building the record, but it is within its discretion to hear other evidence if a party provides "some solid justification" for expanding the record. *Indep. Sch. Dist. No. 283 v. S.D. by J.D.*, 88 F.3d 556, 560 (8th Cir. 1996). A district court's determination of whether an individualized education program meets the requirements of IDEA is a mixed question of law and fact that we review de novo. *E.S. v. Indep. Sch. Dist., No. 196*, 135 F.3d 566, 569 (8th Cir. 1998). Absent a mistake of law, findings of fact are reviewed for clear error. *Id.* Matters of law are reviewed de novo. *Id.*

### A. *Involvement in Individualized Education Program Planning and Implementation*

In their first point on appeal, DESE and MSB argue that the district court erred by determining that they violated the IDEA by: (1) failing to have a representative

present during the creation of Katherine's individualized education program; (2) failing to review and revise the individualized education program to consider the communication needs of a deaf-blind child; (3) failing to consider any harmful effect on or quality of services provided to a child when selecting the least restrictive environment for learning; (4) determining that they were directly involved in educating Katherine.

The IDEA requires states that accept federal funding to provide a disabled student with a free and appropriate education. *Gill v. Columbia 93 Sch. Dist.*, 217 F.3d 1027, 1034 (8th Cir. 2000); *Yankton Sch. Dist. v. Schramm*, 93 F.3d 1369, 1373 (8th Cir. 1996); 20 U.S.C. § 1412(a). Section 504 of the Rehabilitation Act requires the same. 29 U.S.C. § 794(a); 34 C.F.R. § 104.33. A specialized course of instruction must be developed for each disabled student, taking into account that child's capabilities. 20 U.S.C. § 1414(d)(1)(A). The services that a school district provides to a child are to be summarized in a written individualized education program. *Gill*, 217 F.3d at 1034.

The IDEA's procedures ensure parents' participation in the ongoing development of their child's educational program. *Sch. Comm. of the Town of Burlington v. Dept. of Educ. of Mass.*, 471 U.S. 359, 368 (1985). If a child requires special education, the entity responsible for that child's education must form a team to formulate an individualized education program[7] in light of the child's abilities and

[7]An individualized education program is appropriate under the IDEA if it offers instruction and supportive services reasonably calculated to provide some educational benefit to the student for whom it is designed. *Rowley*, 458 U.S. at 201; *Blackmon v. Springfield R-XII Sch. Dist.*, 198 F.3d 648, 658-59 (8th Cir. 1999). Federal law does not mandate that special education "maximize the capabilities" of disabled children, but states are free to establish a program with such a mandate if they wish. *Rowley*, 458 U.S. at 198; *Fort Zumwalt Sch. Dist. v. Clynes*, 119 F.3d 607, 612 (8th Cir. 1997). One purpose of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special

parental views about the child's education. 34 C.F.R. §§ 300.343(b)(2), 300.346(a)(1). The parents, the child's teacher, and a school official knowledgeable about special education must be included on the team that devises and reviews the individualized education program, and parents are free to invite other individuals with expertise to participate. *Burlington*, 471 U.S. at 368; 34 C.F.R. § 300.344. The individualized education program must be reviewed at least once a year, and it should be periodically revised in response to information provided by the parents and to ongoing evaluations of the child's progress. 34 C.F.R. § 300.343(c)(2). School districts and state education departments may be held liable for failing to meet their obligation under IDEA. 20 U.S.C. § 1415(a), (i)(2)(a).

In a suit by an aggrieved party under the IDEA, the court engages in a twofold inquiry, asking (1) "has the State complied with the procedures set forth in the Act?" and (2) is the individualized education program "reasonably calculated to enable the child to receive educational benefits?" *Rowley*, 458 U.S. at 206–07. "If these requirements are met, the State has complied with the obligations imposed by Congress and the courts can require no more." *Id.* at 207.

The IDEA distinguishes between state education agencies (i.e. DESE) and local education agencies (i.e. school districts). 34 C.F.R. § 300.2. Typically, state education agencies oversee local education agencies in educating disabled children, and state education agencies are given the main responsibility in implementing IDEA requirements. 34 C.F.R. § 300.370. This case presents the less common situation in which a local education agency is unable to educate a student, and the state education agency then steps in to provide direct services to the student. The IDEA contemplates

---

education and related services designed to meet their unique needs." 20 U.S.C. § 1400(d)(1)(A); *Neosho R-V Sch. Dist. v. Clark*, 315 F.3d 1022, 1026 (8th Cir. 2003). Congressional policies indicate a preference for educating disabled children in a mainstreamed classroom whenever possible. *Gill*, 217 F.3d at 1034; 20 U.S.C. § 1400(c)(5)(D).

such scenarios. For example, if a state education agency oversees a local education agency's creation and implementation of the individualized education program or if the state education agency is providing direct services, the state education agency is responsible for creating and implementing the individualized education program. *See* 34 C.F.R. § 300.341 and § 300.370.[8] Furthermore, 34 C.F.R. § 344 names those people who must be part of the individualized education program development team, including a representative of the public agency who (1) can provide or supervise specially designed instruction to meet the child's needs, (2) is knowledgeable about the general curriculum, and (3) knows about the availability of resources of the public agency.

Missouri's statutory scheme implementing IDEA supports the proposition that DESE is responsible for providing a representative at the individualized education program. To begin with, the parties do not dispute[9] that Katherine is a "severely

---

[8] 34 C.F.R. § 300.341 provides that the state education agency shall ensure that each public agency develops and implements an individualized education program for each child served by that agency or by a private school or, if the state education agency directly provides services to the child, the state education agency is then responsible for developing and implementing the individualized education program. In addition, 34 C.F.R. § 300.370 indicates that state education agencies must use federal funds to support local education agencies or other state agencies in meeting shortages or to provide "direct services" to effectuate the IDEA. "Direct services" are defined in this provision as "services provided to a child with a disability by the State directly, by contract, or through other arrangements . . . ." *Id.*

[9] Although DESE and MSB argue that they should not be responsible for Katherine's education because there was never a *judicial* determination that Katherine was a "severely handicapped" child, absolutely nothing in the record indicates that either entity contested that Katherine was severely handicapped. In fact, Katherine was so severely handicapped that MSB did not have a program to meet her very extensive needs.

handicapped" child.[10] Because Katherine is a "severely handicapped" child, Mo. Rev. Stat. § 162.725 establishes that DESE becomes the direct provider of educational services to Katherine. Specifically, the statute provides that DESE "shall provide educational services for all severely handicapped children residing in school districts which are not included in special districts provided that such school districts are unable to provide appropriate programs of special instruction for severely handicapped children . . . ." Mo. Rev. Stat. § 162.725. Accordingly, because the District could not provide an appropriate program for Katherine and was not part of a special school district, DESE became responsible as the direct provider of educational services to Katherine. Once the District notified DESE and MSB that it could not adequately educate Katherine, the IDEA and Missouri state law placed the onus upon DESE and its divisions to provide Katherine with a free appropriate public education, including the requirement that DESE provide a representative at Katherine's individualized education program planning meeting. Therefore, we affirm the administrative panel's and district court's findings on this issue.

B. *Missouri's Payment Schemes for IDEA Claims*

DESE and MSB next argue that the administrative panel and district court erred in determining that DESE was responsible for the cost of Katherine's tuition payments at Perkins for the 1998-99 and 1999-2000 school years. They assert that Missouri's statutory scheme provides that both the State and local school districts are required to educate–and pay for educating–severely handicapped students. In other words,

---

[10] A "severely handicapped" child is a child under the age of twenty-one "who, because of the extent of the handicapping condition or conditions, as determined by competent professional evaluation, are unable to benefit from or meaningfully participate in programs in the public schools for handicapped children. The term 'severely handicapped' is not confined to a separate and specific category but pertains to the degree of disability which permeates a variety of handicapping conditions and education programs . . . ." Mo. Rev. Stat. § 162.675(3) (2000).

DESE wants the District to shoulder the financial burden for educating Katherine. We disagree.

DESE and MSB assert that Missouri's statutes include provisions for both the State and a school district to "contract" with public or private agencies to provide services to severely handicapped children, thus indicating that a school district can also be liable for the full amount if it contracts with another agency. Their argument, however, is only true in part. Two Missouri statutes apply here. First, the State of Missouri may contract with "another public agency or with a private agency" when doing so would be in the best interest of the child. Mo. Rev. Stat. § 160.735. There is no restriction on whether these agencies are in- or out-of-state. In comparison, a school district may also contract with other districts or public agencies for such special educational services, or "[i]f the board of education of the district finds that no adequate program for handicapped or severely handicapped children is available in nearby districts or through public agencies, it may contract with any organization *within the state* which has programs meeting the standards established by the state board of education." Mo. Rev. Stat. § 162.705(1) (Emphasis added). This provision, unlike section 160.735, restricts a school district's ability to contract by indicating that the district may only contract with in-state public or private entities that have state-approved programs.[11] A school district, on its own, cannot contract with an out-of-state entity under this statute, while DESE is not restricted in such a manner. In addition, section 162.705(2) further provides:

> Per pupil costs of contractual arrangements shall be the obligation of the district of residence, except districts which are part of a special school district, or special district of residence; provided, however, that if the contract is with another district or special district, the district providing the services under contractual arrangements shall include children

---

[11] DESE and MSB fail to note that § 162.705 limits a school district's ability to contract only with entities in the state.

served under such contractual arrangements in determining the total per pupil cost for which the district of residence is responsible. If the contract is with a public agency or an organization, the district of residence shall be entitled to receive state aid as provided in section 163.031, RSMo, and in section 162.980. Where the state board of education contracts for special educational services pursuant to subsection 1 of this section, the state board of education shall submit to the responsible district a bill for the per pupil cost payable by that district under the terms of this subsection. Failure of a district to pay such cost within ninety days after a bill is submitted by the state board of education shall result in the deduction of the amount due by the state board of education from subsequent payments of state moneys due such district or special district.

This section further supports section 162.740, which limits a district's cost per child by the local tax effort.

The hearing panel's and district court's decisions echo the same theme–no Missouri educational agency wanted to take responsibility for educating this child, and all of them were attempting to "pass the buck," both figuratively and literally. Missouri statues make clear that given the facts of the instant case, the "buck" stops with the Missouri Department of Elementary and Secondary Education. We affirm the administrative panel's and district court's decision that DESE is responsible for the cost of Katherine's education for the 1998-99 and 1999-2000 school years, minus the District's local tax effort for those years.

III. *Payment of Fees and Costs*

Finally, DESE and MSB argue that the district court erred in awarding the Lewises their expert-witness fees and expenses as part of their costs in pursuing this claim. DESE and MSB assert that the IDEA does not specifically allow such an award and that Congress and the Supreme Court have not specifically included expert-witness fees as part of the costs in IDEA cases.

We recently addressed and decided this precise issue in *Neosho R-V Sch. Dist. v. Clark*, 315 F.3d 1022 (8th Cir. 2003). In *Neosho*, we upheld the district court's denial of expert-witness fees as "costs" under 20 U.S.C. § 1415(i)(3)(B), a general statute regarding recovery of costs. We held that although "costs" include something more than attorney's fees, Congress failed to specifically include witness fees as part of the costs that can be recovered in IDEA cases. The relevant facts in the instant case and *Neosho* are indistinguishable. *Neosho* thus controls this issue. Consequently, we reverse the district court's award of expert-witness fees, and remand for the entry of a modified judgment that does not award any expert witness a fee or expenses in excess of that authorized for ordinary witnesses by 28 U.S.C. § 1821 and § 1920. In all other respects the judgment of the district court is affirmed.

_____